The defendant John Warren made an informal application to me on October 24th last, the object of which was to induce me to recuse myself. He did not state the particulars but limited himself to a general objection in the following language:
"* * * the reasons for my position was (sic) my confirmed conviction that, because of things which had occurred since the hearing, that your Honor was politically influenced in the making of that decision, and that, in any event, that you are so personally hostile to me that, consciously or unconsciously, it is impossible for you, and was impossible for you, in deciding the case, to be impartial with respect to myself."
A judge must determine the question of his prejudice from his own consciousness. See Hungerford v. Cushing, 2 Wis. 397. I knew of nothing which could be said to be susceptible of establishing the accuracy of the assertion made by the said defendant, and wrote him as follows:
"The grounds of your oral application requesting me to disqualify myself from any further proceedings in the above cause, are not true, in fact.
"I, therefore, deny your application, and will not entertain any further application based on such grounds."
I had decided this case as per an opinion released by me on August 28th last, and marked filed by the clerk in Trenton on August 29th last.
On October 30th, the defendant appeared in open court and filed the pleading styled "Challenge to the Honorable Henry T. Kays, Vice-Chancellor." This pleading is in the form of an affidavit. I have disregarded the technical objection that the application should have been by petition and affidavit.
The only statute which touches upon the disqualification of a trial judge is R.S. 2:26-193, et seq. The grounds stated in the statute are, in effect, as follows:
1. Relationship to a party.
2. Former representation of a party. *Page 583 
3. Expression of an opinion upon a matter in question.
4. Interest in the event of the action.
This statute was intended to provide the practice in the courts of law. It was said, however, in Curtis v. Joyce,90 N.J. Law 47; affirmed, 91 N.J. Law 685, that "it enacts a rule which should govern in all courts," and Chancellor Walker, in In reHague, 103 N.J. Eq. 505 (at p. 512), said that, by analogy, it should be held to apply to proceedings pending in this court. He pointed out that it should only be given effect in this court upon a showing that the objections "fall directly within the provisions of the statutory rule."
Rule 297 of this court, provides that no judge of this court shall entertain, hear or determine any matter if he "has any personal interest therein, or is of close kin to, or has any important business relations with any party thereto or any solicitor or counsel of any party." The affidavit filed in this matter discloses that none of the above stated situations exists.
It is claimed, however, that I am "personally biased, prejudiced and maliciously hostile" to the defendant John Warren, et al., and that I am politically biased and prejudiced against the defendant John Warren.
It has been repeatedly stated that prejudice growing out of business, political or social relations is not sufficient to disqualify a judge. See 33 C.J., Judges, § 154; In re Hague,supra; 536 Broad St. Corp. v. Valco Mortgage Co., 133 N.J. Eq. 240; affirmed, 134 N.J. Eq. 224.
The averments of the affidavit which relate to an alleged bias and prejudice arising from political grounds and which are said to have influenced me on the merits of the controversy between the complainant and the defendants (135 N.J. Eq. 361), have already been determined adversely to the contention of the defendants. See 536 Broad St. Corp. v. Valco Mortgage Co.,134 N.J. Eq. 224. The objection, even if it were meritorious, is not timely. Mr. Justice Colie, in the case of Vanderbach v. HudsonCounty Board of Taxation, 130 N.J.L. 3, reiterating the common law rule in Curtis v. Joyce, supra, said:
"It would be intolerable to allow a litigant to speculate *Page 584 
on the result of a case, and raise a question of jurisdiction only after the decision."
The affidavit also charges that because the defendants petitioned the Chancellor to disqualify me before final hearing I was "personally biased, prejudiced and maliciously hostile" to the defendant John Warren with the result that I have not acted "and cannot act in the future herein, as an unbiased, unprejudiced, impartial and independent jurist," and that I "did not give faith and credit to the uncontradicted testimony of the defendants and Rose Heller, and did not apply and enforce the established equitable rules and the decisions applicable to this action." This allegation is, in fact, false and is also out of time for the reasons above stated.
The next charge relates to the release of the opinion. The allegations relative to this matter (paragraphs 20 to 23, inclusive) are mere unsupported conclusions of the pleader.
The opinion is dated August 15th, 1944, which is the date on which the first draft was typed. Several changes were made in the first draft and after such changes it was released for filing on August 28th. It is further alleged that the opinion was withheld until "exactly one week before" John Warren was to begin the hearing of his charges against the State Board of Tax Appeals whom he had charged were "oppressing" him and his clients. The contention is that the opinion was filed at that particular time in order to disparage Warren in the eyes of the public and that by so doing I "caused a more widespread publication of [the] news." How the release of the opinion or its publication would be material or relevant to determine the fitness of officials connected with the executive department of the state is beyond comprehension.
While I deem it unnecessary to answer such an allegation, I will, nevertheless, satisfy the curiosity of the defendant. I directed the opinion to be mailed to the clerk on Monday, August 28th, and after the opinion had been mailed, I allowed the newspaper reporters to inspect copies. This practice has been followed by me in all cases concerning local matters. I invoked this practice a number of years ago at the request of the newspaper reporters who cover the Chancery cases in Jersey City. The opinion was apparently received by the *Page 585 
clerk in Chancery on August 29th, 1944, and the decision appeared in the newspapers on that day.
It is also alleged that I caused a "holding up of this opinion after it was prepared, and a delivery of it to the Democratic organization and political release thereof, which was published in the newspapers before the opinion was ever filed in court." These allegations are baseless untruths. The allegations constitute a brazen attempt to derive some advantage, however remote, out of the fortuitous circumstance that Mr. Warren was to commence some wholly unrelated proceeding against someone else he has accused of "oppressing" him.
Mr. Warren, upon making the application under consideration, expressed the opinion that R.S. 2:26-194 is not applicable. It is therein provided: "The court may, in its discretion, try the challenges or appoint three disinterested persons as triors thereof."
If the above cited statute has any force in this court, it would seem that the rule laid down in some jurisdictions, namely, that the mere filing of an affidavit of prejudice does not deprive the judge of jurisdiction, but permits him to pass on its sufficiency and to dispose of the question of disqualification raised by it, in the same manner as any other question that may come before him during the trial of a cause, should be followed here. See 30 Am. Jur., Judges, § 89.
In State v. DeMaio, 69 N.J. Law 590; affirmed,70 N.J. Law 220, the magistrate was sought to be recused "because he had prejudged the case before him, and because he had created the situation and facts to be by him tried for the purpose of convicting the defendant." Demand was made that triors be appointed, but the magistrate refused to do so and overruled the recusation. The Supreme Court held that "The mere allegation to him of such bias or prejudice, by way of challenge and his refusal to appoint triors, do not prove the existence of bias or prejudice." When the case reached the Court of Errors, that court quoted with approval, the rule found in 11 Encycl. Pl. Pr.783, that
"If the facts upon which the alleged disqualification of the judge rests are not admitted by him, or are denied by the other party, the challenger must lay before the court proof of their truth. As to the *Page 586 
sufficiency of such proof, the judge himself, if sitting alone, must decide."
And continued, that, in the instant case,
"Nor was there any error in the action of the justice in overruling the recusation and proceeding with the trial of the case. As has just been stated, unless the facts alleged in the challenge are admitted to be true by the judge, the challenging party is required to substantiate them by proofs. No offer to do this was made on behalf of the plaintiff in error, either at the time of the interposition of the challenge or thereafter, and the action of the magistrate in overruling the challenge was, by implication, a denial of the truth of the facts upon which it was based. Not only is a judge not required to withdraw from the hearing of a case upon a mere suggestion that he is disqualified to sit, but it is improper for him to do so, unless the alleged cause of recusation is known by him to exist, or is shown by proof to be true in fact. Moses v. Julian, 45 N.H. 52."
The Kentucky Court of Appeals, in German Insurance Co. v.Landram, 88 Ky. 433; 11 S.W. Rep. 367, felt impelled to point out that the abuse of the statutory privilege of challenge had reached such proportions that it operated, "in its practical effect, to enable the shrewd and reckless litigant to avoid the trial of his case by the regular elected judge without cause, and to deprive the honest litigant of what is his constitutional right," and it was there held that the trial judge must determine the sufficiency of the affidavit.
It has been said that "it is the duty of a judge to exercise the judicial functions duly conferred upon him by law, and he has no right to disqualify himself in the absence of a valid reason, or when no party to the case could legally recuse him." 33 C.J.,Judges, § 176.
And the authorities further hold that this rule should be followed, "regardless of personal embarrassment, feelings of delicacy, or other considerations not amounting to legal disqualification." 30 Am. Jr., Judges, § 93.
See, also, State v. DeMaio, supra.
I have, therefore, reached the conclusion that the affidavit of challenge is insufficient in law and untrue in fact. *Page 587 
The foregoing determination is subject to review on appeal, as is of course, any decree or order which may hereafter be advised in this suit. The interests of justice require that this suit, having reached this state, should be brought to a conclusion, and that the merits of the controversy between the complainant and the defendants be finally settled. In order that this may be accomplished, there must be some point at which the defendants' dilatory moves must end. As was said in Lambertson v. TulareCounty Superior Court, 151 Cal. 458; 91 Pac. Rep. 100, in disposing of a claim that a judge whose motives and integrity were impugned could not sit to hear the contempt proceedings, "the recalcitrant and offending party would need only to insult each judicial officer in turn until the list was exhausted, and thus, by making a farce of legal procedure, go scathless and unpunished."
The application is denied and an order will be entered accordingly.